Please call the next case. 3-12-10-47 Audubon v. Daniel McCartney Good morning, Brad Edward on behalf of Audubon. This morning we're asking you to reverse the decision concerning the June 19, 2008 accident. You know, many times when we come before this Court on a manifest weight case, it's exactly as Your Honor had pointed out. It's a matter of looking at two doctors' testimony, evidence is relatively evenly balanced. And one of the parties is saying, we think that you should give more significance to my IME because he said this versus the treatment position. There's some type of discussion along those lines. When we look at this particular case, we're not saying to this Court, look at Dr. Martin and look at Dr. Mitzenfelt and rebalance their opinions. We're asking you to take a look at the entire record here and to look at the medical opinions of Dr. Martin, Dr. Clark, Dr. Howder, the inconsistencies in the petitioner's reporting of his injury and his conversation with Mr. Collins, and to compare that body of evidence versus Dr. Martin, the normal discussion that is often had with this Court is against the manifest weight of the evidence. We're not just simply saying we have one doctor and we think our doctor is more credible. They didn't weigh it a certain way and we want you to revisit it and re-weigh it in another manner. What we're saying is when we look at Dr. Martin, Dr. Martin did an IME exam. He says we have a pre-existing condition here due to an obese condition. It's a degenerative condition of the knee. He points out in his report all the bases that he has, some of the more particular ones are, that the petitioner has had the same type of injury to his right knee and that was not work-related. So we have a natural progression in this gentleman, 385-pound gentleman, 6'2", I believe, of degenerative pre-existing condition with the right and with the left knee. We have Dr. Clark's examination which took place in June and July of 2008. He reviews the MRI. He says this is a pre-existing inflammatory degenerative change. These problems are related to arthritic knee condition. At most the petitioner suffered a sprain. We look at Dr. Howder. He examined the petitioner on June 9th, which was prior to the accident that we are here for today. He says the petitioner has a history of bad arthritis on the right leg unrelated to work. Degenerative joint disease likely to flare, excuse me, degenerative joint disease in the knees likely to flare, no causation to injury. That medical, when you look at this case and you look at the inconsistencies in how the petitioner reported this, and what I'd like to do is talk for a second about Mr. Collins' conversation. Mr. Collins is the claims representative of Audubon. He has a conversation with the petitioner after this supposed June 6th accident and prior to the accident of June 19th that happened. And the petitioner is telling him about having this pain at work and he wants to file a claim. And so Mr. Collins says, well, I used to be a claim threat for a company. I understand how this works. But you have to have a work accident. You just can't have a symptom manifest itself at work. A week later, we have the June 19th accident. And we hear the petitioner report the accident as a twisted knee. He testifies at arbitration, well, I slipped in the mud and rolled my leg. One witness said he stepped on uneven ground and twisted a knee. He tells Dr. Martin, I was pulling felt, took a step to the left, my knee popped. He goes to the Pekin Hospital on the 19th. Doesn't really give an accident history. Says, I stepped down and I heard a pop. But interestingly, the Pekin Hospital reports state there was no accident reported on June 6th. And it says we're seeing him today for the same problem he had before. So when we look at all of this evidence together. Is it the same problem? Yes, sir. Twisted knee? Pardon me? Isn't the same problem an inflamed knee? He's complaining of the same things. Exactly. So they are seen for the same problem, aren't they? Same problem he had, that he had when he was seen on June 6th. And remember, the Commission found that there was no work-related accident at that time. And I think that fits into the big argument that we're making here today. He had a preexisting condition with both knees. And he was having problems. He did have that. And I can see there's evidence, medical evidence and testimony that supports your argument here. How do you answer the question, though, if it exacerbates or aggravates a preexisting condition, would that not be compensatory? Under certain facts, yeah. Aggravation of preexisting condition. Absolutely. Tell us why that couldn't be the case here. I don't think it is here when we look at the medical opinions of Martin, Clark, and says it's a sprain. So if there is an aggravation, Clark's saying at most it's a sprain. They're saying this is an underlying degenerative condition. If you look at the condition that the operation took place for on the right, it was a meniscus tear. It's the same problem he has on the left. And there's evidence that that was a degenerative condition, a degenerative tear. This man just had knees that were bad. He was overweight. He walked on his knees. His knees got worse over time. And this record supports that finding. When we look at the entire record, the entire record paints the picture that he has a preexisting degenerative condition, and that is what's requiring him to have to have this surgery that's being recommended by Dr. Misenfeld, not what happened at work, whether it even happened at work. That's the essence of our argument today. It's not just one doctor versus another. We believe the weight of this record is so heavy in favor of the conclusion that this was not a work-related event. That's what we're asking for reversal. Thank you. Thank you, counsel. The penalty may respond. Chief Justice Holdredge, members of the Court, Mr. Elwood, pleasure to be here. Aggravation of preexisting condition. Counsel, what's your name? I'm sorry. John Mitchell. I know I'm with a sore throat and a cough. The aggravation of a preexisting condition has been recognized for a long time by the Workers' Compensation Commission in this Court. There is no doubt that he had a problem with his knee earlier in June, just as there is no doubt that he had a more severe problem with his knee on June 19, 2008. If you've read the testimony, and I'm sure you have, he experienced a pop in his knee and he could not support the weight that he had, his own weight. But then counsel seems to be acknowledging that, of course, the aggravation of a preexisting injury is a legitimate basis for compensation under the Act. Right. What he's seeing is there's testimony of the weight, the greater weight of the medical testimony is that's not what happened here. It mostly was a temporary strain. He's saying the doctors are saying there was no aggravation. So how do you respond to that? How do I respond to that? The MRI did show some effusion in the joint. The MRI was taken after the June 19, 2008 accident. And there was also a problem, I can't remember exactly what it was, but the gastrocnemius muscle that was identified, along with degenerative changes in the knee. Dr. Mitzelfeld, in his November 16, 2009 note, specifically addressed an aggravation of a preexisting condition, attributing it to the injury he sustained on June 19. How many doctors opined that it was an aggravation of a preexisting condition? After June 19, 2008, Dr. Mitzelfeld was the only one that opined that. Dr. Clark, if you really look at Dr. Clark's records, he has no findings, positive or negative. He just does a little hand reading. So he's neutral. Excuse me? So he's sort of neutral on his findings. I don't think he had any findings. I don't want to call it neutral. I don't think he had any. You got Mitzelfeld testifying on behalf of the claimant, correct? Correct. Making the causal connection, so to speak. And then on the other side, who testified against the claimant? Martin. That's it? Yes, sir. Okay. The, and Dr. Martin, as part of his opinion, referenced the lack of any history of accident in the hospital records on June 19. And it was there. And I think I cited the page where it was found. Dr. Martin also suggested that Mr. Rickert be taken off work. Not because, in his opinion, it was a work-related injury, but because of his problem. And up until that time, except for maybe a day or so, Mr. Rickert did work until after June 19, 2008. A lot of what is being argued by the appellant is findings made on the other two cases. There were three of them that were consolidated for the purpose of trial and had three separate and distinct decisions. No one appealed the other two decisions. I argue that that is the same as relying upon a decision of the commission to support what you guys are going to decide up here on a case. And there are two cases, I made note of their names, Global Products and S&H Floor Covering, that says you do not use commission decisions as authority for anything. These are three separate cases tried at the same time. If you look at the commission's decisions, if you want to let those three, those other two cases be considered, they found insufficient evidence. They didn't find any lack of evidence, which is true. He didn't give very good histories. Mr. Collins taught him how to give a good history that he didn't know how to do before. That is the difference, in my opinion, between the two cases and the one that we're here on today. I would ask, since he did have witnesses to the accident, since Mr. Rickert had to be taken out of the area where he worked, and if you look at Exhibit 6, you'll understand what that area looked like that he was working. He was taken out in a bucket of a tractor or a skidster. Skidster. Yes, sir. He was taken out in a skidster. He couldn't walk off the job. He could not stand up, is what I understand it to say. And they carted him out, much like an ambulance attendant would, I guess. And then how did he get to the hospital? He drove himself to the hospital. So your theory of the case is simple. You're testably or you're specifically acknowledging he had a pre-existing condition. You're saying that he aggravated it at work, but there's medical testimony evidence to support that. Right. That's basically my argument. And that the law says under CISPRO doesn't have to be a primary result. Correct. That is correct, and we did cite CISPRO in our brief. Any questions? Thank you. Counsel, you may reply. Just a couple quick points. We're not citing the other Commission decisions to cite Commission authority before this Court. We're trying to give the Court an accurate representation of what happened in these cases. But I would point out that the arguments that he's saying that we're making from the other cases were all part of the findings that were made by the Commission in the history and the statement of facts in this particular case, which is on appeal before this Court. So we're not drawing comments from those other cases. You try to summarize his theory as basically this is an aggravation and Mitzelfeld supports it. Our position is that if there was an aggravation, at most it was a sprain, that he had a significant underlying degenerative condition. And we understand and agree with everything that you've said with respect to CISPRO and what the law is. We agree with that. We don't think that in this case on this whole record that you have an aggravation of a pre-existing condition. And that's the public argument. Kennedy, did you make any argument before the circuit court or within your brief that while this man had a sprain, he may have been entitled to some TTD, but he wasn't entitled to 84 weeks? Or he may have been entitled to some medical expenses, but he wasn't entitled to the total amount that were awarded? Or that he is not entitled to prospective medical treatment? Did you make any of those arguments?  No. Because I was carrying off the job site in the bucket of a Skid Loader. Well, not when he testified he hurt his knee. But the commission said that he chose not to walk off the job site. You have to look at this. I don't understand. Your employees take you off the job site in a Skid Loader bucket any time you want them to? No. The difference is if I fall down unconscious and you have to carry me out versus I say, can you help me walk? There's a big difference. And as the Court pointed out, this gentleman drove himself to the hospital. So it's – I mean, I think this – But there was testimony that he – didn't one of the co-workers, in fact his supervisor, testify that this man hurt himself? Oh, yeah. Absolutely. He was testifying untruthfully? Well, in this – our position is that the two witnesses that testified in support of this gentleman were both close friends and one was a brother-in-law. And our position is that this case, after the conversation with Mr. Collins, was simply an attempt to find a way to get the pre-existing condition compensable. Okay. So you attack whether there was any real aggravation, period. Period. Yes, sir. But no arguments that there was some injury, but not to the extent that the commission awarded. Right. And I think – Okay. I just want to understand the arguments. Yeah. I want nothing at all. Right. And I think – I mean, I think the Court can look at this and say that most all the aggravation. You could certainly point to that point and remand it for anything else, any further consideration. So, again, I think you understand where I'm coming from and thank you for the time. Thank you, counsel. Counsel Bolt, thank you for your arguments. This matter will be taken under advisement. A written disposition shall issue.